UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ERIC LEE CAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:13cv286 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI) as provided for in the Social Security Act.  42 U.S.C. §416(I); 42 U.S.C.

§423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section 205(g) of the Act provides, inter alia, "[a]s part

of his answer, the [Commissioner] shall file a certified copy of the transcript of the record

including the evidence upon which the findings and decision complained of are based.  The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the [Commissioner], with or without

remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to

any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security
      Act through March 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since December 31,

2006, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: mood disorder, posttraumatic stress disorder (PTSD), borderline personality disorder, history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he cannot engage in complex or detailed tasks, but remains capable of simple routine tasks that do not require working with the public and no close proximity or cooperation with others.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on June 20, 1968, and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disaled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on February 28, 2014. On June 6, 2014, the defendant filed a memorandum in support of the Commissioner's decision, and on June 20, 2014, Plaintiff filed h reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in April 2011, alleging disability beginning on December 31, 2006. (Tr. 113-19.) His applications were denied initially  and upon reconsideration. Plaintiff requested a hearing before

an ALJ . Plaintiff, his mother, and a vocational expert (VE), testified at the May 2012 hearing. The ALJ found that Plaintiff was not disabled and in August 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision.

Plaintiff was in the United States Navy and witnessed the death of several sailors who were severely burned when their submarine caught fire. Plaintiff continues to have nightmares two to three times a month. This trauma formed the basis of Plaintiff's PTSD. While in the Navy, Plaintiff received medical treatment for mental issues, insomnia, back pain, and headaches. Plaintiff was Honorably Discharged from the Navy, with Personality Disorder listed as the medical reason for Plaintiff's discharge.

Plaintiff was born in 1968, and was 38 years old as of the alleged onset date. Plaintiff is a high school graduate with two years of college. In the fifteen years prior to his onset date, Plaintiff worked as a collection clerk, front desk clerk, and a telemarketer.

Plaintiff suffers from low back pain. His treating physician prescribed Cyclobenzaprine, Sulindac, and Tramadol. Eventually Vicodin replaced the Tramadol. Plaintiff's physician also referred himn to physical therapy for consideration of a Transcutaneous Electrical Stimulation (TENS) unit. The VA physical therapist noted that Plaintiff demonstrated guarded partial range of motion in lumbar spine, but special testing only revealed that the hamstring length lacked 10 degrees bilaterally. The physical therapist assigned Plaintiff a TENS unit. Plaintiff needs assistance in order to place the unit's electrodes on his back. Plaintiff described the back pain as aching with no radiation. The pain worsened with activity. Sitting down sometimes caused pain. The pain could fluctuate between 1 and 10 on a 10 point scale. Plaintiff testified that the pain affected his ability to sit or stand for long periods and that he could lift about twenty-five

pounds, but that lifting at that weight level caused him pain.

Plaintiff's neurologist noted that Plaintiff had headaches three to four times a week and that they were located behind the eyes, throbbing in character, and associated with some nausea, phonophobia, and photophobia. The neurologist diagnosed migraine headaches and horizontal nystagmus and prescribed Naproxen and Imitrex. By the time of the hearing, the headache frequency had subsided to two a month. These headaches would last 4 to 5 hours and Plaintiff typically retreated to a cool and dark place until they passed.

Plaintiff suffers from hypertension, diabetes mellitus, hypertriglyceridemia, and obesity. Plaintiff's hypertension has been variously treated with Atenolol and Hydrochlorothiazide. Plaintiff's diabetes has been confirmed by high blood glucose and high A1c readings. Plaintiff checks his blood glucose levels and takes Metformin. Plaintiff's hypertriglyceridemia is monitored through blood testing. Plaintiff's obesity has been confirmed through several Body Mass Index (BMI) measurements over 30. Plaintiff naps for several hours daily.

A CT scan revealed sinus problems and Plaintiff's sinusitis was treated with Flunisolide, Loratidine, and Pseudoephedrine.

As noted, Plaintiff suffers from PSTD. He has also been diagnosed with Bipolar Disorder, Mood Disorder, Personality Disorder, as well as several diagnoses related to substance abuse. Treatment at the VA Healthcare Center consisted of psychiatric evaluation, medication, and group therapy three times a week. Plaintiff's psychiatric medications included: sertraline; lamotrigine; aripiprazole; hydroxyzine. The Mental Residual Functional Capacity Assessment completed by the state agency set forth several limitations:

> Moderately limited ability to complete a normal workday and
> workweek without interruptions from psychologically based

6

symptoms;

Moderately limited ability to perform at a consistent pace without an unreasonable number and length of rest periods;

Moderately limited ability to interact appropriately with the general public;

Moderately limited ability to accept instructions and to respond appropriately to criticism from supervisors;

Moderately limited ability to work in coordination with or proximity to others without being distracted by them;

Moderately limited ability to carry out detailed instructions;

Moderately limited ability to understand and remember detailed instructions.

Tr. 367-68.

In support of remand or reversal, the Plaintiff argues that the ALJ erroneously failed to incorporate the mental health, headache, low back, hypertension, diabetes, obesity, and sinus disease impairments and the combined impact of all the impairments into the RFC.

Plaintiff argues that the ALJ acknowledged that the state agency Mental Residual Functional Capacity Assessment (MRFCA) is consistent with the medical record, but then the ALJ failed to include critical limitations from the MRFCA in the RFC. The ALJ's RFC finding contained no limitations concerning the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and concerning the ability to perform at a consistent pace without an unreasonable number and length of rest periods. Nor did the RFC contain any limitations in relation to the ability to accept instructions and to respond appropriately to criticism from supervisors. Plaintiff argues that if the MRFCA has been held to be consistent with the medical record, then these limitations must be taken into account.

Plaintiff concludes that the failure to discuss and analyze these limitations and provide reviewable reasons for their exclusion from the RFC requires remand.

Plaintiff reminds the court that his headache impairment affected him two days a month. The VE testified that no more than one absence per month would be tolerated by an employer and no more than ten absences per year. Plaintiff further claims that the headache impairment also supported limitations in relation to the triggers, phonophobia and photophobia, yet there are no limitations related to phonophobia and photophobia in the RFC. Plaintiff requests a remand on this point.

Plaintiff also argues that the evidence clearly supports a low back impairment that was severe enough to prevent the performance of work that required lifting and carrying above 25 pounds, *i.e.*, in the medium, heavy, or very heavy range. Plaintiff notes that the ALJ's RFC expressly included that Plaintiff could perform work in the medium, heavy, or very heavy range. Plaintiff claims that the ALJ's RFC is illogical because his back impairment required muscle relaxants, NSAIDs, Vicodin, and a TENS unit. Plaintiff requests a remand because he believes the back impairment limitations, when combined with all the other limitations supports his application for disability benefits.

The Commissioner argues that Plaintiff's arguments are flawed, due to the Agency's "special technique" for evaluating mental impairments. The Commissioner provides the following review of the Agency's process for evaluating mental impairments. At steps two and three of the sequential evaluation process, ratings are assigned in four broad functional areas—daily activities; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three areas is

rated on a "five-point scale: none, mild, moderate, marked and extreme," and "[t]he degree of limitation for episodes of decompensation is rated on a four-point scale." *Id.* § 404.1520a(c)(4). If the claimant's degree of limitation is rated "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," then the mental impairment is typically found not severe. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the agency will determine whether it meets or equals a listed impairment. *Id.* And, if the claimant's mental impairment is severe, but does not satisfy a listing, the agency assesses the claimant's residual functional capacity. *Id.* § 404.1520a(d)(3).

The record in the present case contains two forms commonly used in applying the special technique—the Psychological Review Technique (PRT), Tr. 370-83, and the Mental Residual Functional Capacity Assessment (MRFCA), Tr. 367-69. The PRT form documents the evaluation of a mental impairment at steps two and three of the sequential inquiry. *See* POMS DI 24505.025(E). In Section III of the form, which addresses the "paragraph B" criteria of the listed mental impairments, the mental health professional rates the claimant's degree of functional limitation in the four broad functional areas on the applicable scale. *See* POMS DI 24505.025(H)(4)(a).

The Agency's interpretation of its own regulations is that "[t]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment" and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)[3]; *see also Kraus v. Colvin*, No. 13-578, 2014 WL 1689717, at *15 (E.D. Wis. Apr. 29, 2014) ("That the ALJ's findings with

9

respect to the 'paragraph B' criteria of a Listing are not intended as the claimant's RFC is also apparent from the significant differences between the PRT and the MRFCA forms."). In some cases, the ALJ will repeat the paragraph B ratings verbatim in the RFC assessment, and thus must accurately convey those limitations to the vocational expert. *See, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) (RFC assessment stated that the claimant had moderate limitations in concentration, persistence, and pace). In other cases, however, the ALJ provides a more specific assessment of the claimant's mental ability to perform work-related tasks in the RFC finding, which are then communicated to the VE. *See, e.g.*, *Kraus*, 2014 WL 1689717, at *15-16 ("As the ALJ explained in his decision, the mental residual functional capacity assessment requires a more detailed assessment than the preliminary assessment used at steps 2 and 3.").

The Agency uses a second form, the MRFCA, to identify the specific functional limitations caused by the claimant's mental impairments. Section I of the MRFCA is a worksheet section where the mental health professional records his or her "summary conclusions." *See* POMS DI 24510.060; Tr. 367. "There the form lists twenty mental health functions grouped under four categories: understanding and memory; sustained concentration and persistence; social interaction; and adaptation. To the right of each of the mental health functions is a series of checkblocks containing the following options: not significantly limited; moderately limited; markedly limited; no evidence of limitation in this category; and not ratable on available evidence." *Kraus*, 2014 WL 1689717, at *13; *see also* Tr. 367-68. The term "moderately limited" has a "specific definition" in the context of the MRFCA form. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) (*citing* POMS DI 24510.063(B)(2)). The MRFCA does

not have a box for mild limitations, so the mental health professional is instructed to check the box for "moderately limited" whenever "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063(B)(2). "In other words, a 'moderate' limitation on the MRFCA means only that there is some limitation in the claimant's capacity to consistently and usefully perform the activity, no matter how small." *Kraus*, 2014 WL 1689717, at *16; *see also Smith*, 631 F.3d at 637 (MRFCA's definition of "moderately limited" does not require "that the individual's capacity be at a level that is unacceptable in a national workforce"). Given this lack of specificity, the instructions provide that "'[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III.'" *Smith*, 631 F.3d at 637 (quoting POMS DI 24510.063(B)(2)); *see also Kraus*, 2014 WL 1689717, at *16 ("The evaluator is then to describe in narrative form 'the degree and extent of the capacity or limitation' in Section III of the MRFCA."). It is the narrative in Section III of the MRFCA that constitutes the consultant's opinion about mental functional capacity. *See Kraus*, 2014 WL 1689717, at *15-16; *Parini v. Colvin*, No. 12-1072, 2013 WL 5372344, at *6 (E.D. Wis. Sept. 24, 2013).

In summary, the Agency uses one form (the PRT), and an accompanying set of broad criteria, for evaluating mental impairments at steps two and three. It uses a different form (the MRFCA), in determining the specific nature and degree of the functional limitations caused by those impairments. The MRFCA contains a worksheet section, but it is in the narrative section that the medical consultant records an opinion about the claimant's work-related mental abilities.

Based on the above, the Commissioner maintains that, in the present case, the ALJ properly applied the regulatory scheme. The PRT form completed by Dr. Lovko indicated that

the Plaintiff's mental impairments were severe, but did not meet or medically equal a listed impairment. Tr. 371, 381. In assessing the paragraph B criteria, Dr. Lovko rated Plaintiff as having moderate difficulties in two broad functional areas—maintaining social functioning and concentration, persistence, or pace. Tr. 381. Similarly, the ALJ found, at steps two and three of the sequential evaluation process, that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 24-26. In assessing the paragraph B criteria, the ALJ rated Plaintiff as having moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. Tr. 25. The ALJ stated that the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment," Tr. 24, and proceeded to assess Plaintiff's mental residual functional capacity.

Dr. Lovko, after opining that Plaintiff had severe mental impairments that did not satisfy a listing, then completed an MRFCA form. Tr. 367-69. In Section I, Dr. Lovko checked boxes indicating that Plaintiff was "moderately limited" in six of the twenty mental function items. Tr. 367-68. In Section III, Dr. Lovko described the evidence that supported his opinion of Plaintiff's mental functional capacity, which was as follows:

> The evidence suggests the claimant can understand, remember, and carry-out unskilled tasks without special considerations in many work environments. The claimant can relate at least on a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task[s] for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with unskilled work. Tr. 369.

Plaintiff argues that the ALJ did not include all of the limitations set forth in Dr. Lovko's opinion. Pl. Br. 16. This argument is based on the boxes that Dr. Lovko checked in the worksheet (Section I) portion of the MRFCA. Tr. 367-68. However, as explained above, the checked boxes are not Dr. Lovko's opinion about Plaintiff's functional capacity, nor do they

indicate the precise nature or degree of his mental limitations. *See Smith*, 631 F.3d at 637; *Kraus*, 2014 WL 1689717, at *16. Thus, "as many other courts have found," this Court should hold that Section I is only a worksheet, and that "the ALJ need only look to Section III for the RFC assessment." *Wade v. Colvin*, No. 12-8260, 2014 WL 349261, at *12 (N.D. Ill. Jan. 31, 2014) (*citing Smith*, 631 F.3d at 637; *Nathan v. Colvin*, 551 F. App'x 404, 408 (9th Cir. 2014); *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013); *Land v. Comm'r of Social Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012)).

In the present case, the ALJ found, consistent with Section III of the MRFCA completed by Dr. Lovko, that Plaintiff could not perform complex or detailed tasks, but could do simple, routine tasks that did not entail work with the public or close proximity or cooperation with others. Tr. 26, 369. In so finding, the ALJ relied on Dr. Lovko's opinion, Tr. 30, which constitutes substantial evidence in support of the RFC finding, particularly in light of the fact that no mental health professional indicated that Plaintiff's work-related limitations exceeded those found by the ALJ. *See Parini*, 2013 WL 5372344, at *6 (ALJ may rely on medical opinion about mental functional capacity that a claimant can perform simple, routine work despite her mental impairments)); *see also Calhoun v. Colvin*, No. 1:12-CV-00204-RBC, 2013 WL 3834750, at *10 (N.D. Ind. July 24, 2013) (ALJ may rely on "specific RFC assessment" that translates ratings of broad functional areas into specific work-related limitations) (citing *Johansen v. Barnhart*, 314 F.3d 283, 285-86 (7th Cir. 2002)).

The Commissioner further argues that, even if the ALJ was required to consider the checked boxes in Section I of the MRFCA, there is no fatal inconsistency between those boxes and Dr. Lovko's narrative opinion. *See Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (ALJ

may implicitly resolve conflict between checkboxes and narrative opinion so long as decision does not contain fatal gaps or contradictions). Again, a box checked "moderately limited" means only that the claimant has *some* limitation in a broad area, no matter how small; it does not show that the claimant cannot acceptably perform the activity. *Smith*, 631 F.3d at 637; *Kraus*, 2014 WL 1689717, at *16. Regarding limitations on "the ability to accept instructions and to respond appropriately to criticism from supervisors," Pl. Br. 16, Dr. Lovko opined that Plaintiff, despite having some difficulty in responding to supervision, could "relate at least on a superficial basis on an ongoing basis with co-workers and supervisors." Tr. 369. The ALJ, relying on this opinion, found that Plaintiff could tolerate superficial contact with others. Tr. 26. Regarding the alleged need to take breaks due to distractions and symptoms, Dr. Lovko ultimately opined that Plaintiff, if limited to unskilled tasks, could understand, remember, concentrate, and persist long enough to carry them out without special considerations. Tr. 369. The Commissioner concludes that Dr. Lovko's checking the "moderately limited" boxes in Part I of the MRFCA is not fundamentally inconsistent with his opinion that Plaintiff retained the mental capacity to perform unskilled work. *See Givens v. Colvin*, 551 F. App'x 855, 862 (7th Cir. 2013) ("Furthermore, as reflected on the form Dr. Christopher completed, Givens's moderate limitation still demonstrated satisfactory functioning. So it is not illogical that Givens would be able to perform most jobs despite his moderate limitations.") (*citing Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)); *Jackson*, 2012 WL 2931243, at *6.

Plaintiff counters the Commissioner's arguments as follows. If the consultative psychologist considered the summary conclusions in the MRFCA not worthy of impacting function, then the consultative psychologist should have checked the "not significantly limited"

14

boxes, not the "moderate" boxes. If a "moderate" box is checked, then a specific function is impacted and there should have been a corresponding explanation in the MRFCA's Functional Capacity Assessment section supporting the limitation. However, if the consultative psychologist fails to provide a detailed explanation concerning the specific limitation, or if the consultative psychologist provides a contrary explanation, then grounds for giving the MRFCA less weight due to inconsistency would exist. Either the MRFCA is consistent within itself and supports all the "moderate" limitations (in which case the ALJ erred by not including all the "moderate" limitations in the RFC) or the MRFCA is inconsistent within itself (in which case the ALJ's reliance upon it is illogical and violates the logical bridge requirement.) *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002); see *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir.2004); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir.2001).

While Plaintiff's arguments have a point, they fail to take into account the Agency's own interpretations of the MRFCA as set forth in the POMS DI cited by the Commissioner above. Moreover, the Agency's interpretation of its own regulations is reasonable given the breadth of the paragraph B criteria and the accompanying rating scale. Thus this court will defer to the Agency's interpretation. *See Wash. State Dep't of Soc. & Health Servs. V. Guardianship Estate of Keffeler*, 537 U.S. 371, 388 (2003).

With respect to Plaintiff's argument that the ALJ did not properly evaluate Plaintiff's physical impairments, the Commissioner points out that Plaintiff has not shown that all of these conditions qualify as medically determinable impairments that satisfy the duration requirement. A medially determinable impairment is roughly what a lay person thinks of as a diagnosis; however, there are very specific regulatory requirements, drawn from the statutory definition of

disability, for a medical condition to qualify as a "medically determinable impairment." The regulations state that a "medically determinable impairment" must "be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.  Only an "acceptable medical source" can establish the existence of a medically determinable impairment; a diagnosis from a nurse or other providers does not suffice.  20 C.F.R. § 404.1513(a). Additionally, a medically determinable impairment must last or be expected to last for a continuous period of at least 12 months.  20 C.F.R. § 404.1509.

Moreover, Plaintiff has not shown that his work-related limitations exceed those indicated in the RFC assessment, nor has he shown that these conditions would prevent him from doing the work identified by the VE.  The fact that a medically determinable impairment exists does not necessarily  mean that it limits the claimant's ability to work.  *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005).  Additionally, Plaintiff initially maintained that he had no physical limitations, stating in an April 2011 function report that he had no problems lifting, standing, walking, sitting, and performing postural and manipulative motions.  Tr. 206.  After his applications were denied initially and on reconsideration, Plaintiff claimed that he could only work at the sedentary level with a sit/stand option with only occasional postural movements, without any evidence to explain how his condition deteriorated since he submitted the function report.  Tr. 225.  Considering this, the Commissioner argues that the ALJ properly viewed Plaintiff's later complaints with great skepticism.  Tr. 24 (explaining that Plaintiff's medical records did not contain allegations of disabling symptoms until he applied for disability benefits).

For all the foregoing reasons, the decision of the Commissioner will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.


Entered: September 12, 2014.


s/ William C.  Lee
William C. Lee, Judge
United States District Court
